**Fill in this information to identify the case:**

Debtor Name   Marcantonio Barnes

United States Bankruptcy Court for the: Eastern                District of   Virginia
                                                                      (State)

Case number:   23-11190-KHK

❑ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11          02/20

Debtor's Plan of Reorganization, Dated October 23, 2023

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

The Debtor is an individual. Since 2019, he been in the business of building a residential investment property in Great Falls, Virginia. He also owns and operates a business, Safetypaws, LLC, which plans to manufacture and sell a novel pet care product. Although now employed, he was also in business as a lawyer.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit B.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $ 2,340,000 .

The final Plan payment is expected to be paid on 60 months after confirmation

[Summarize the numerical projections, and highlight any assumptions that are not in accord with past experience. Explain why such assumptions should now be made.]
**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Marcantonio Barnes                                              23-11190

Debtor Name _____     Case number_____

---

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of [insert the name of the Debtor] (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:

| | |
|---|---|
| 0 | classes of priority claims; |
| 7 | classes of secured claims; |
| 5 | classes of non-priority unsecured clams; and |
| 0 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

---

## Article 2: Classification of Claims and Interests

### SEE EXHIBIT C

---

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| | | SEE EXHIBIT C |

---

Marcantonio Barnes                                        23-11190

Debtor Name _____    Case number_____

| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid amortized over 5 years from the petition date, at the statutory rate of interest applicable to such claim, in full. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01  **Claims and interests shall be treated as follows under this Plan:**

SEE EXHIBIT C

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired ☐ Unimpaired | [Insert treatment of priority claims in this Class, including the form, amount and timing of distribution, if any. For example: "Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. Except: [____].") [Add classes of priority claims if applicable] |
| Class 2 – **Secured claim of** [*Insert name of secured creditor.*] | ☐ Impaired ☐ Unimpaired | [Insert treatment of secured claim in this Class, including the form, amount and timing of distribution, if any.] [Add classes of secured claims if applicable] |
| Class 3 – **Non-priority unsecured creditors** | ☐ Impaired ☐ Unimpaired | [Insert treatment of unsecured creditors in this Class, including the form, amount and timing of distribution, if any.] [Add administrative convenience class if applicable] |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired ☐ Unimpaired | [Insert treatment of equity security holders in this Class, including the form, amount and timing of distribution, if any.] |

**Article 5: Allowance and Disallowance of Claims**

| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: |

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.  NO COURT APPROVAL REQUIRED IF <$100,000. |

**Article 6: Provisions for Executory Contracts and Unexpired Leases**

| Debtor Name | Marcantonio Barnes | Case number | 23-11190 |

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) | The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |

SEE EXHIBIT D

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ‌ 30 ‌ days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

SEE EXHIBIT E

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |

SEE EXHIBIT F

| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |

| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |

| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |

| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of ‌ VIRGINIA ‌ govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |

| [8.07 | **Corporate governance** | N/A |

Debtor Name    Marcantonio Barnes

Case number    23-11190

[8.08  **Retention of Jurisdiction**    SEE EXHIBIT G

## Article 9: Discharge

**Discharge if the Debtor is an individual under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:
      (i) imposed by this Plan; or
      (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Debtor Name ____Marcantonio Barnes_____  Case number____23-11190_____

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: Other Provisions**

[Insert other provisions, as applicable.]

SEE EXHIBIT G

Respectfully submitted,

Debtor Name   Marcantonio Barnes                          Case number   23-11190

✗  /s/ Marcantonio Barnes                        Marcantonio Barnes
[Signature of the Plan Proponent]                [Printed Name]

✗  /s/ Daniel M. Press                           Daniel M. Press

[Signature of the Attorney for the Plan Proponent]   [Printed Name]

Daniel M. Press, VSB# 37123
CHUNG & PRESS, P..
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
(703) 734-3800
dpress@chung-press
Counsel for Debtor

Official Form 425A          **Plan of Reorganization for Small Business Under Chapter 11**          page **7**

## EXHIBIT A – ANALYSIS OF LIQUIDATION VALUE OF THE ESTATE

If liquidated under Chapter 7, the following is an analysis of what would be available to pay unsecured creditors.

Assets:

Beach Mill property:  $1.7 million

Less costs of sale, 10%, $170,000
Mortgages: $2,172,042.50 Carter Bank
$437,637.84   Newtek

NET: $0.00

Gershwin property: $820,000

Less costs of sale, 10%, $82,000
Mortgage: $638,781.60
Tax lien: $230,445.82

NET: $0.00

Cars:

2020 Jeep            $28,000
Lien $30,159  Net: $0.00

2019 Jeep            $27,000
Lien $27,657  Net: $0.00

1991 Range Rover      $10,000
Exemption $6000
Net: $4000

Money:  Checking as of petition date $4520.16
Exemption: $2598.00                      Net: $1922.16

Claim against Monarch:                    $200,000 est.

Contract deposits:                        $50,000

All other assets are fully exempt.

Less: Administrative claims: C11 Professionals/Trustee $20,000 est., net of retainer
                                   C7 Trustee commission on $255,922.16: $16,046.11

Less: Priority Tax claims:      $206,725.93

Total:  $242,772.04

Net: $13,150.12 prior to legal fees on the Monarch claim (expected to exceed that by a significant amount).

As such, after payment of secured, priority and administrative claims, there would be no distribution to unsecured creditors in a Chapter 7 liquidation.    This plan proposes 100%.

# EXHIBIT B - PROJECTIONS

| Expense Category | Creditor | Proposed Plan Notes | Monthly Plan Payments (Year 1) | Monthly Plan Payments (Year 2) | Monthly Plan Payments (Year 3) | Monthly Plan Payments (Year 4) | Monthly Plan Payments (Year 5) |
|---|---|---|---|---|---|---|---|
| Federal Tax (Gershwin proceeds to reduce) | | IRS secured: pay from sale of Gershwin, balance added to Priority Tax. Claim: $230,446 @ 7%. (Net Claim $90k @ 7%) | | | | | |
| Federal Tax | IRS (Secured) | $206,725.93 paid at 7% over 5 years from the petition date. Intend to object to amount owed of priority claim. | 1,947.00 | 1,947.00 | 1,947.00 | 1,947.00 | 1,947.00 |
| Mortgage #1 (Gershwin) | Nationstar/Mr. Cooper | n/a | 4,474.00 | 4,474.00 | 4,474.00 | 4,474.00 | 4,474.00 |
| Federal Tax | IRS (Priority) | pay current from January; pay in full ($2413) upon sale of Gershwin. ($43) was filed as unsecured but actually secured) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Home Owners Dues | Oak Manor Home Owners Association | | 0.00 | | | | |
| Auto Payment #1 | Trust Bank | (PIF year 3) | 585.00 | 585.00 | 585.00 | 0.00 | 0.00 |
| Auto Payment #2 | Trust Bank | (PIF year 3) | 605.00 | 605.00 | 605.00 | 0.00 | 0.00 |
| County Property Tax | Fairfax County | $24,230.58 in 4 quarterly payments @ 10%. | 2,147.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SBA Loan | Newtek Small Business Finance | Pay per terms, plus cure arrears over 5 years. Safetypawz to pay arrears and monthly payment from capital raise | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Personal Loan | Lafayette Federal Credit Union | Pay per terms, plus cure arrears ($256) over 5 years | 2,915.00 | 2,915.00 | 2,915.00 | 2,915.00 | 2,915.00 |
| Mortgage (Beach Mill) | Carter Bank & Trust | $10,055.94/month, plus cure arrears over 5 years. $90k + $12k Arreas. Payments beginning in January, plus attorneys fees and foreclosure costs ($120k total-no interest) | 12,055.94 | 12,055.94 | 12,055.94 | 12,055.94 | 12,055.94 |
| Electricity (Gershwin) | Dominion Power | n/a | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Natural Gas (Gershwin) | Washington Gas | n/a | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Water (Gershwin) | Fairfax Water | n/a | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Home Insurance (Gershwin) | Nationwide | n/a | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Auto Insurance | Nationwide | n/a | 265.00 | 265.00 | 265.00 | 265.00 | 265.00 |
| Mobile | AT&T | n/a | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Student Loans | U.S. Department of Education | n/a | 2,000.00 | 2,000.00 | 2,000.00 | 2.00 | 2,000.00 |
| TV/Internet (Gershwin) | Verizon | n/a | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Electricity (Beach Mill) | Dominion Power | n/a | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Natural Gas (Beach Mill) | Washington Gas | n/a | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Home Insurance (Beach Mill) | Farmers Insurance | n/a | 584.00 | 584.00 | 584.00 | 584.00 | 584.00 |
| Real Estate Tax (Beach Mill) | Fairfax County | n/a | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Food and Household Misc. | | n/a | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| General Unsecured Creditors | Miscellaneous | Annual payments of 20% of claims, beginning at month 16, every 12 months after that, final payment at month 60 | 0.00 | 10,689.00 | 10,689.00 | 10,689.00 | 10,689.00 |
| Total Estimated Monthly Plan Expenses | | | 32,427.94 | 40,969.94 | 40,969.94 | 37,781.94 | 39,779.94 |
| Base Salary Income After Tax (Monthly) | | | $31,987.00 | $31,987.00 | $31,987.00 | $31,987.00 | $31,987.00 |
| Anticipated Bonus Salary Income After Tax (Monthly) | | | $14,375.00 | $14,375.00 | $14,375.00 | $14,375.00 | $14,375.00 |
| Surplus for Use on Beach Mill | | | $13,934.06 | $5,392.06 | $5,392.06 | $8,580.06 | $6,582.06 |

| One-time Administrative Creditors Payment | $20,000.00 |
|---|---|

| General Unsecured | |
|---|---|
| a. Offitt Kurman | $32,328.25 |
| b. Cap1 | $3,012.20 |
| c. Cap1 | $133.00 |
| d. Wells Fargo | $14,945.27 |
| e. Amex | $90,500.79 |
| f. IRS penalty | $26,575.56 |
| g. Synchrony | $17,269.60 |
| h. Synchrony | $421.00 |
| i. Synchrony | $300.00 |
| j. Coehlo | $163,059.94 |
| k. Witt ($70k disputed) | $88,880.00 |
| l. Pesner Law | $12,285.00 |
| a. Camba LLC | $2,466 |

| | |
|---|---|
| c. Citi | $1,797 |
| d. Fx Car Tax | $3,644 |
| e. German Kitchen | $64,250 |
| f. Johnson | $30,000 |
| g. Mach Rico | $85,000 |
| h. Porcelainosa | 30,066.23 |
| i. TD | 2,134 |
| j. Valley View Ext. | $16,047 |
| k. Woodbr. Glass | $35,000 |
| **Unsecured Totals** | **$732,534.84** |

## EXHIBIT C – CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan establishes 12 classes of claims, plus two categories of unclassified claims (for administrative expenses and priority taxes). The classes of claims are identified and treated as follows:

### A.    *Unclassified Claims*

1.    *Administrative Expenses.* Pursuant to Code § 1191(e), Administrative Expense claims approved and allowed by the Court shall be paid in full on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims that by their terms are not due and payable on or before the Effective Date shall be paid when due. Administrative claims where all or a portion of awarded fees are being held by counsel or the trustee in escrow may be paid upon allowance by the Court to the extent of such escrowed sums, with any balance to be paid as provided above.

The total professional fees to Debtor's counsel are estimated to be approximately $20,000, partially covered by the prepetition retainer. The Subchapter V Trustee's fees are estimated at approximately $10,000.00, less than the amount already paid into escrow.

The Debtor is unaware of any other unpaid administrative expense claims not being paid in the ordinary course.

### B.    *Priority Taxes*.

See 3.03 of the Plan form.

### *Classified Claims and Interests*

SECURED CLAIMS:

*Class A (Nationstar Secured Claim on Gershwin property).*   Class A consists of the claim of Nationstar Mortgage LLC, secured by Debtor's Gershwin Ct. property (Claim 19, $638,781.60). This claim shall retain its lien and be paid in full at closing on the sale of the Gershwin Ct. property.  Until such sale, Debtor shall make adequate protection payments in the amount of the mortgage payments pursuant to contract, and shall cure any arrears in cash as of the effective date of the Plan.  This claim is not impaired.

*Class B (IRS tax lien).*   Class B consists of the IRS tax lien (secured portion of Claim 13, $230,445.82).  This claim will retain its lien and be paid all net proceeds of the sale of Debtor's Gershwin Ct. property, after payment of ordinary closing costs including agents' commissions, any unpaid real estate taxes, the Class C HOA claim, and the prior deed of trust lien (Class A). The holder of the Class B claim shall release the Gershwin Ct. property from the lien upon such sale and payment.  Pursuant to 11 U.S.C § 1129(a)(9)(D), any amount remaining unpaid shall be paid as provided in 3.03 of the Plan form.  All payments shall be applied first to the Class B

secured claim and then to the priority claim.  Upon payment in full of the secured Class B claim, the holder thereof shall release the lien of record.  This class is impaired.

*Class C (Oak Manor HOA).*  Class C consists of the secured claim of Oak Manor Homeowners Association (Claim 9).  This claim shall retain its lien and be paid in full at closing on the sale of the Gershwin Ct. property. The holder of the Class C claim shall release its lien upon such sale and payment.  As the holder of the Class C claim accelerated all 2023 assessments and included them in the secured claim, if the property has not sold by January 1, 2024, Debtor shall commence making regular payments of HOA assessments starting in January 2024 until the sale. This class is impaired.

*Classes D and E (Truist car liens).*  Classes D and E consist of the claims of Truist Bank secured by liens on Debtor's 2020 and 2019 Jeep automobiles (Claims 7 and 8, respectively).  The holder of these claims shall retain its lien and Debtor will cure any arrearages in cash on the effective date of the plan, and shall pay these claims in full per their contract terms.  These claims are not impaired.

*Class F (Fairfax County real property tax claim on Beach Mill property).*  Class F consists of the real property tax claim of the Fairfax County Department of Tax Administration, secured by a first priority statutory lien on the Debtor's Beach Mill property.  This claim has not been filed, but is estimated at $24,230.58.  The holder of this claim shall retain its lien and this claim shall be paid in full, with interest at the statutory rate from the petition date, in 4 quarterly payments beginning 90 days after the Effective Date of the Plan.  Any other secured tax claims of Fairfax County (other than as to Gershwin Ct., which shall be paid upon its sale) shall be treated in the same manner. This class is impaired.

*Class G (Carter Bank secured claim on Beach Mill property).*  Class G consists of the secured claim of Carter Bank, secured by a deed of trust on the Beach Mill property, filed (Claim #12) in the amount of $2,173,042.50.  The holder of the Class G secured claim shall retain its lien.  Any pre-confirmation default shall be deemed waived, and the loan shall be deemed converted to permanent as of February 1, 2023, pursuant to Exhibit G to Proof of Claim 12.  The obligation to reside in the property for one year shall commence as of the date Debtor obtains the RUP from Fairfax County.  Debtor shall commence making the regular contract payments a provided in the Note ($10,055.94) as of the Effective Date of the Plan, and shall cure any pre-confirmation arrearages in monthly installments over 5 years from the Effective Date, commencing 30 days after the Effective Date.  The holder of the Class G claim shall file a statement of such arrearages within 30 days of the Effective Date, and the Debtor shall file any objection thereto within 30 days of such filing. This class is impaired.

*Class H (Newtek secured claim on Beach Mill property).*  Class G consists of the secured claim of Newtek Small Business Finance, LLC (Claim 10).   Because the value of the Debtor's collateral securing this claim is less than the senior encumbrances, the claim is deemed fully unsecured under 11 U.S.C. § 506(a/d), and the lien shall be void as of the Effective Date of the Plan.   To the extent not paid by the principal obligor (Safetypaws, LLC), the Class H claim shall be paid in accordance with the loan terms from the Effective Date until paid.   All defaults as of the Effective Date shall be waived, and to the extent there are any arrearages as of the Effective

Date, those arrearages shall be cured in quarterly payments over the 5 year term of this Plan. This class is impaired.

*Class I: Student Loans*.  Class I consists of the presently unfiled claim of the U.S. Department of Education for student loans (scheduled in the amount of $221,520).  The Class I claim shall be paid in accordance with the loan terms and applicable law from the Effective Date until paid, including any repayment programs, forgiveness, or forbearances to which Debtor may at any time be entitled.   To the extent there are any arrearages as of the Effective Date, those arrearages shall be cured in quarterly payments over the 5 year term of this Plan.  This class is impaired.

*Class J: Lafayette Federal Credit Union*.   Class J consists of the unsecured claims of Lafayette Federal Credit Union (claims 4, 5 and 6).   The Class J claims shall be paid in accordance with the loan terms from the Effective Date until paid.   All defaults as of the Effective Date shall be waived, and to the extent there are any arrearages as of the Effective Date, those arrearages shall be cured in quarterly payments over the 5 year term of this Plan.  This class is impaired.

*Class K: Small claims.* Class K consists of all unsecured claims of $1000 or less.   The Class K claims shall be paid in full on the Effective Date of the Plan.   Any other creditor may notify the Debtor through counsel that it wishes to reduce its claim to $1000 and be treated as a Class K claim and it shall be paid as such.   This class is not impaired.

Class L: *Class  (General Unsecured Claims).* Class L consists of all allowed general unsecured claims against the Debtor (non-priority unsecured claims other than classes I, J and K.  The Class L claims shall be paid annually 4 months after the anniversary of the Effective Date (with the final payment in month 60), 20% of the allowed amount of such claims, for 5 years, paying them in full, without interest.

*Equity Interests/Debtor's interest in property of the estate.*   Except as provided in this Plan, the Debtor shall retain his interests in property of the estate.

### As to All Claims

The right to object to all claims is reserved.  The payment on any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in the undersigned counsel's attorney trust account (or an interest bearing account if over $10,000) until a Final Order is entered, and shall be paid to the creditor, distributed to the holders of other allowed claims, or refunded to the Debtor, as appropriate, upon entry of such a Final Order. Payments on claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court.  No distribution shall be made on any claim until the cumulative distribution on that claim equals at least $20.00, except that the final distribution to any class shall distribute all remaining funds due to each creditor without regard to amount.  Any check mailed to the proper address and returned by the post office as undeliverable, refused by the creditor, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor.  Nothing herein shall constitute a waiver of the Debtor's right to object to any claim or an acknowledgement that such claim is valid or allowable.

EXHIBIT D: ASSUMED CONTRACTS AND LEASES

Upon the Effective Date of the Plan, the following contracts shall be assumed:

NONE.

Parties to assumed contracts shall have 30 days from the Confirmation Date to file a Proof of Claim for the amount necessary to cure the arrears as of that date, which arrears shall be paid promptly by the Debtor in full (unless objected to, in which case the Debtor shall pay the unobjected-to portion in full).

Any other prepetition Executory Contracts and Leases in effect as of the Effective Date and not specifically rejected, assumed, or assumed and assigned will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Confirmation Date. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, or the Debtor's Estate, Assets, or properties. All Rejection Claims shall be Class G General Unsecured Claims.

## EXHIBIT E - IMPLEMENTATION OF PLAN

A. Funds for implementation of the Plan will be derived from the Debtor's income from wages, his anticipated bonuses, and from pursuing his claim against Monarch Construction.  As shown in Exhibit B, Debtor's income is projected to be sufficient to pay all claims as provided for in the Plan.

In addition, Debtor shall sell his Gershwin Court townhouse, which will pay off the mortgage on that property and most if not all of the federal tax lien.

B.      As funds are available, Debtor shall diligently complete the construction of the Beach Mill property to the point of obtaining a Residential Use Permit from Fairfax County, and shall move into it upon obtaining the RUP.  If the Debtor is unable for any reason to make the payments required by this Plan, Debtor may sell or refinance the Beach Mill property, satisfying the Class F and G claim(s) secured by such property in full or in part therefrom, and shall apply any net proceeds to any missed payments due under the Plan, and then to unpaid administrative expenses, priority tax claims, and any unpaid Class L claims until paid in full, in that order.

Pursuant to Code § 1146(a), the making or delivery of any deed, deed of trust or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, bills of assignments, deeds-in-lieu of foreclosure executed in connection with any of the transactions contemplated under the Plan (including but not limited to the foregoing sale(s) or refinance), including but not limited to the private sale or public auction of either Property, shall not be subject to any stamp tax, transfer or other similar tax. The appropriate state or local government officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to Code § 1146(a).

C.      The Debtor shall retain the Assets of the estate (except as otherwise provided in this Plan) and shall therewith operate his business and personal affairs and pay ordinary living and business expenses, including the cost of completing the Beach Mill property, while paying creditors the amounts set forth in this Plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue its claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## EXHIBIT F – DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

1.1     *"Administrative Bar Date"* means the first Business Day thirty (30) days after the Confirmation Date and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, other than claims for counsel fees, except as otherwise provided in the Plan.

1.2     *"Administrative Claim"* means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request or motion for payment or approval) of which is timely filed by the Administrative Bar Date.

1.3     *"Allowed Claim"* means a Claim against the Debtor: (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed, or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4     *"Assets"* means all property, real or personal, in which the Debtor has an interest.

1.5     *"Avoidance Actions"* means proceedings and causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.6     *"Bankruptcy Code"* or *"Code"* means Title 11 of the United States Code.

1.7     *"Bankruptcy Court"* or *"Court"* means the U.S. Bankruptcy Court for the Eastern District of Virginia, or, if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.8     *"Bankruptcy Rules"* or *"Rules"* means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.9     *"Bar Date"* means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date for the filing of pre-petition claims against the Debtor was October 3, 2023 (January 22, 2024, for governmental unit claims).

1.10    *"Business Day"* means any day except Saturday, Sunday, or other day on which commercial banks in Virginia are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11    ***"Case"*** means the case commenced by the Debtor under Chapter 11 of the Code pending in the Bankruptcy Court and bearing Case Number **23-11190.**

1.12    ***"Cash"*** means United States currency, drafts, checks, deposit accounts, or other cash equivalents.

1.13    ***"Claim"*** means a claim as defined in § 101(5) of the Code.

1.14    ***"Claimant"*** means a Person holding a Claim against the Debtor.

1.15    ***"Class"*** means each class of Claims or Interests established and set forth in Exhibit C of the Plan.

1.16    ***"Collateral"*** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.17    ***"Confirmation"*** means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.18    ***"Confirmation Date"*** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.19    ***"Confirmation Hearing"*** means the hearing under Code § 1128 scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.20    ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan.

1.21    ***"Creditor"*** means the holder of a Claim.

1.22    ***"Days"*** shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.23    ***"Debtor"*** means **Marcantonio Barnes.**

1.24    ***"Disputed Claim"*** means a Claim:

(a)    which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended; or

(b)    which is listed as disputed under any provision of this Plan, or

(c)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.25    *[RESERVED]*

1.26    *"Equipment"* means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.27    *[Reserved]*.

1.28    *"Estate"* means the bankruptcy estate of the Debtor.

1.29    *"Executory Contracts"* means all contracts, including unexpired leases, to which the Debtor is or was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.30    *"Final Decree"* means the Final Order of the Bankruptcy Court that closes the Case.

1.31    *"Final Order"* means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.32    *"Inventory"* means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.33    *"Lien"* has the meaning set forth in §101(37) of the Code.

1.34    *"Material Default"* of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.35    *"Miscellaneous Assets"* means Assets other than Real Property, Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.36    *"Person"* means an individual, a corporation, an LLC, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other legal entity.

1.37    ***"Petition Date"*** means July 25, 2023, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.38    ***"Plan"*** means this Plan, as it may be amended from time to time.

1.39    ***"Priority Claim"*** means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim, a Professional Claim, or a Priority Tax Claim.

1.40    ***"Priority Tax Claim"*** means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll, or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.41    ***"Professional"*** means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.42    ***"Professional Claim"*** means any Claim for compensation or reimbursement of a Professional that will be paid through the Plan.

1.43    ***"Proof of Claim"*** means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.44    ***"Rejection Claim"*** means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.45    ***"Schedules"*** means the schedules of assets and liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.46    ***"Secured Claim"*** means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code that is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

1.47    ***"Subchapter V Trustee"*** means Marc Albert, the appointed trustee under Code § 1183, or such successor trustee who is or shall be appointed.

1.48    ***"Unexpired Lease"*** means a lease of personalty or realty that had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49    ***"Unliquidated Claim"*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50    ***"Unsecured Claim"*** means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

# EXHIBIT G – OTHER PROVISIONS

## RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor and the Debtor's operations for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters;

C.      To allow and approve or disapprove any administrative expenses not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to Code § 1193;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.      To issue any Order necessary to carry out the Plan.

H.      To enter the Debtor's discharge.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtor to manage the Debtor's financial affairs, including the sale, disposition, or lease of assets, without further Order of the Court, and shall permit the Debtor, in the Debtor's discretion, to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtor's assets, without further Order of the Court.

## MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under Code § 1193 at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of Code §§ 1122 and 1123, with the exception of subsection (a)(8) of § 1123. Following the Confirmation Date but before the Effective Date, the Debtor may also alter, amend, or modify the Plan under Code § 1193. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard

to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to Code § 1193.

## MISCELLANEOUS PLAN PROVISIONS

The Debtor shall act as disbursing agent to make the required distributions under the Plan.

No creditor may take any collection action against Debtor or property of the estate or of the Debtor on any Claim or debt scheduled or provided for under this Plan so long as Debtor is not in Material Default in performing its obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Virginia law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

After the Confirmation Date, the Reorganized Debtor may retain and pay professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.