Peter M. Pearl, Esquire (VSB #22344)
Bryson J. Hunter (VSB #46988)
Timothy J. Lovett (VSB #97438)
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia 24002
Telephone: (540) 512-1832
Facsimile: (540) 342-4480
ppearl@spilmanlaw.com
bhunter@spilmanlaw.com
tlovett@spilmanlaw.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **In re:** | **Chapter 11 (Subchapter V)** |
| **MARCANTONIO W. BARNES,** | **Case No. 23-11190** |
| **Debtor**. | |

**CARTER BANK & TRUST'S RESPONSE AND**
**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS**
**OR IN THE ALTERNATIVE CONVERT BANKRUPTCY CASE**

Carter Bank & Trust (the "Bank"), by counsel, responds in support of the *Motion to Dismiss or in the Alternative Convert Bankruptcy Case and Memorandum in Support Thereof* (the "Motion") [ECF No. 135] filed by Newtek Small Business Finance, LLC ("Newtek"). In support thereof, the Bank states as follows:

**Jurisdiction**

1. This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §157.

2. Venue lies properly in this Court pursuant to 28 U.S.C. §1409.

1

**Background**

3. On September 18, 2020, Debtor executed a secured Adjustable Rate Note in favor of First Heritage Mortgage, LLC in the original principal amount of $2,100,000 (the "Note") for the purchase of property and construction of improvements thereon located at 10590 Beach Mill Road, Great Falls, Virginia 22066 (the "Property"). The Note was subsequently lawfully transferred to the Bank. A true and accurate copy of the Note is attached as **Exhibit A**.

4. To secure repayment of the Note, Debtor executed a Credit Line Deed of Trust on September 21, 2020, which was recorded in the Circuit Court Clerk's Office of Fairfax County, Virginia Instrument Number 2020107794.0001 (the "Deed of Trust"), granting a security interest in the Property. The Note and Deed of Trust and any documents executed in connection therewith will be collectively referred to as the "Loan Documents." A true and accurate copy of the Deed of Trust is attached as **Exhibit B**.

5. The Loan Documents were modified and amended through a series of Construction Loan Modification Agreements, dated September 23, 2021, December 21, 2021, January 26, 2022, April 27, 2022, and September 29, 2022, respectively.

6. Debtor failed to make payments under the Note as modified and the Bank commenced foreclosure sale proceedings. This case was filed on the eve of the Bank conducting its foreclosure sale of the Property. Upon information and belief, Debtor filed his case for the purpose of preventing the Bank from exercising its rights with respect to the Property.

**Procedural History**

7. On July 25, 2023, Marcantonio W. Barnes (the "Debtor") initiated this bankruptcy case by filing a voluntary petition pursuant to Subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

8. Marc E. Albert, Esq. was appointed Chapter 11 Subchapter V Trustee and filed a *Chapter 11 Subchapter V Trustee's Report of No Distribution* [ECF No. 122] on July 15, 2024.

9. On May 17, 2024, the Court entered the *Order Confirming Plan* (the "Confirmation Order") [ECF No. 112], confirming the *Plan of Reorganization for Small Business Under Chapter 11* (the "Plan") [ECF No. 100] filed by the Debtor with some modifications.

10. Under the Plan, the Bank retained and maintains a fully secured claim on account of its filed proof of claim (POC No. 12) in the amount of $2,173,042.50. Pursuant to the Loan Documents, the Plan, and the Confirmation Order, Debtor was obligated to make 84 monthly payments to the Bank to commence after the Effective Date of the Plan, based on a thirty-year amortization schedule at 8.5%, with a balloon payment on the seventh anniversary of the Effective Date or June 1, 2031. Payments under the Plan are to be made on the first day of each month in the amount of $17,598.83 (the "Monthly Payments").

11. Under the default terms of the Loan Documents, which govern pursuant to the terms of the Confirmation Order, upon default and mailing of a notice of default by the Bank, Debtor is given thirty (30) days to cure.

12. On May 8, 2025, Newtek filed the Motion.

13. On May 9, 2025, the Bank filed its *Notice of Default Dated May 9, 2025 (Class G)*, (the "Bank NOD") [ECF No. 137]. As provided in the Bank NOD, Debtor failed to make the Monthly Payments due on March 1, 2025, April 1, 2025, and May 1, 2025. Following the filing of the Bank NOD, Debtor has failed to make the June 1, 2025 Monthly Payment and has failed to cure his defaults for the March through May 2025 Monthly Payments within the 30 day cure period.

3

14. On May 30, 2025, Debtor filed his *Response of Debtor to Motion to Convert or Dismiss* (the "Response") [ECF No. 140].

## Argument

15. Bankruptcy Code section 1112(b)(4) provides that a chapter 11 bankruptcy case can be dismissed or converted "for cause," including a "material default by the debtor with respect of a confirmed plan." 11 U.S.C. § 1112(b)(4)(N).

16. The Plan defines a "Material Default" to occur if:

(1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

Plan, ¶ 1.34.

17. In addition to the Bank, both Newtek and the IRS have filed and served notices asserting defaults under the Plan [ECF Nos. 133, 134]. On information and belief, and based upon the Court's docket, the Debtor has neither cured the defaults nor obtained from the Court or affected creditors an extension of time to cure the defaults. By the terms of the Plan, as modified, Debtor is in material default.

18. In his Response to the Motion, Debtor cites the Plan's alternative remedies provided by the Plan, including Newtek's ability to proceed pursuant to its loan documents and the Debtor's ability to cure by selling the Property. Debtor does not address his material default in missing payments to the IRS, but suggests that the Plan's remedy for any payment default is the sale or refinancing of the Property and that the Debtor "will proceed accordingly."

4

19. While Debtor states that he will "proceed accordingly" by presumably selling or refinancing the Property to cure to his continuous defaults to multiple creditors' treatments under the Plan, the Bank is unaware of any proposed sale or refinancing effort by the Debtor. Given that the Bank is the first lien holder on the Property, any proposed sale or refinancing will require the Bank's consent or will need to completely satisfy the Bank's claim. *See* Deed of Trust, ¶ 18 ("If all or any part of the Property or any interest in the Property is sold or transferred…without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument."). And given that the Debtor has been in default on his Monthly Payments to the Bank for four months and has not contacted the Bank to discuss a cure, sale, or refinancing, the Bank does not believe the Debtor will "proceed accordingly" in an expeditious manner.

20. Further, under the Plan and Confirmation Order, due to the Debtor's un-cured defaults on his obligations to the Bank and the Bank's provision of the Bank NOD, the Bank is entitled to accelerate the Note, demand immediate payment in full of all sums owed, and invoke the power of sale over the Property without further notice or approval. *See* Confirmation Order, ¶ (4)(D)(3) ("The Material Default Provisions of the Plan shall not apply to the Class G claim, which shall be governed by the default provisions of the Loan Documents…. If the Debtor fails to timely cure a default as provided therein, any stay related to the Bank's ability to exercise its rights will be terminated."); Note, ¶ 7(B) ("If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."); Deed of Trust, ¶ 22 ("If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."). Should the Motion be denied, the

Bank intends to formally accelerate the Note and exercise its rights to the Property. Absent Debtor's ability to reinstate following acceleration, Debtor's reliance on Exhibit E, ¶ B of the Plan as an alternative remedy to dismissal or conversion is illusory.

21. Since the Debtor is in material default under the Plan and no alternative remedy is satisfactory, dismissal or conversion of Debtor's case to one under chapter 7 is warranted under 11 U.S.C. § 1112(b)(4)(N).

22. Additional "cause" exists to dismiss or covert Debtor's case under section 1112(b)(4)(F): "the term "cause" includes…unexcused failure to satisfy timely any filing or reporting requirements established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F).

23. Section 1183(c)(2) requires that "[n]ot later than 14 days after the plan of the debtor is substantially consummated, the debtor shall file with the court and serve on the trustee, the United States trustee, and all parties in interest notice of such substantial consummation." 11 U.S.C. § 1183(c)(2).

24. Neither Debtor's Plan nor the Confirmation Order provide for when Debtor's Plan was to be substantially consummated. Under the Bankruptcy Code, "substantial consummation" means the "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

25. Under the Plan, on the Effective Date, all property of the estate vested in the reorganized Debtor and the Debtor assumed the business and management of all estate property. Plan, Ex. G. While late, the Debtor eventually made payment some Monthly Payments to the Bank

6

on August 8, 2024. Therefore, Debtor's Plan was substantially consummated pursuant to 11 U.S.C. § 1101(2) by August 8, 2024, at the latest.

26.   Debtor failed to timely file and serve the notice of substantial consummation required by 11 U.S.C. § 1183(c)(2) and has not requested an extension of time to file and serve the notice. Since the Debtor has not timely filed and served the notice of substantial consummation, "cause" exists to dismiss or convert the case pursuant to 11 U.S.C. § 1112(b)(4)(F).

27.   If, in the alternative, the Debtor's Plan has not been substantially consummated, thereby explaining Debtor's failure to give the required notice, "cause" exists to dismiss or convert under 11 U.S.C. § 1112(b)(4)(M) as the Debtor's material defaults are evidence of his inability to effectuate the Plan's substantial consummation. *See In re Sundale, Ltd.*, 471 B.R. 300, 303 (Bankr. S.D. Fla. 2012) ("If a plan were in material default prior to substantial consummation, the plan could not, logically, be substantially consummated, since it is highly unlikely that a plan in material default could be substantially consummated.").

**WHEREFORE**, the Bank respectfully joins in support of Newtek's request that the Court enter an order dismissing the Debtor's bankruptcy case or, in the alternative, converting it to a case under chapter 7 of the Bankruptcy Code.

Dated June 12, 2025               Respectfully submitted,

                                  CARTER BANK & TRUST

                                  By: /s/ Bryson J. Hunter
                                        Of Counsel

Peter M. Pearl, Esquire (VSB #22344)
Bryson J. Hunter (VSB #46988)
Timothy J. Lovett (VSB #97438)
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia 24002-0090
Telephone: (540) 512-1832
Facsimile: (540) 342-4480

ppearl@spilmanlaw.com
bhunter@spilmanlaw.com
tlovett@spilmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2025, a true and correct copy of the foregoing was delivered by electronic means to all parties who receive notice in this case pursuant to the Court's CM/ECF system, and by first-class mail, postage pre-paid, to:

Daniel Press, Esq.
Chung & Press, P.C.
6718 Whittier Avenue, St. 200
McLean, VA 22101
*Counsel to the Debtor*

Marcantonio W. Barnes
10367 Gershwin Court
Oakton, VA 22124

Marcantonio W. Barnes
10590 Beach Mill Road
Great Falls, VA 22066

Jack Frankel, Esq.
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314

Marc Elliott Albert, Trustee
Stinson LLP
1775 Pennsylvania Avenue, NW, Ste. 1800
Washington, DC 20006

Michael A. Condyles, Esq.
Kutak Rock LLP
1021 East Cary Street, Ste. 810
Richmond, VA 23212
*Counsel for Newtek*

                                       /s/ Bryson J. Hunter
                                           Counsel